UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREENCYCLE PAINT, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>PAINTCARE, INC., et al.,<br><br>    Defendants. | Case No. 15-cv-04059-MEJ<br><br>**ORDER GRANTING MOTIONS TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: Dkt. Nos. 25 & 26 |

## INTRODUCTION

Pending before the Court are (1) Defendant Clean Harbors Environmental Services, Inc.'s ("Clean Harbors") Motion to Dismiss and (2) Defendant PaintCare, Inc.'s ("PaintCare") Motion to Dismiss, both pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) and joined by Defendant Stericycle Environmental Solutions ("Stericycle"). Dkt. No. 25 (Clean Harbors Mot.); Dkt. No. 26 (PaintCare Mot.); Dkt. No. 28 (Stericycle Joinder to Mots.). Plaintiff GreenCycle Paint, Inc. ("Plaintiff") filed an Opposition (Dkt. No. 35), and Defendants filed Replies (PaintCare Reply, Dkt. No. 38; Clean Harbors Reply, Dkt. No. 36; Stericycle Joinder to Replies, Dkt. No. 39). Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS** Defendants' Motions **WITH LEAVE TO AMEND** as discussed below.

## BACKGROUND

PaintCare is a non-profit created by the American Coatings Association, which is comprised of companies that manufacture and sell paint. Compl. ¶ 2, Dkt. No. 1-1. It is the only stewardship organization[1] in California approved to implement California's Architectural Paint Recovery Program, Cal. Pub. Res. Code § 48700, et seq. (the "Program"). *Id.* ¶¶ 7-8. California

---

[1] A "'[s]tewardship organization' means a nonprofit organization created by the [architectural paint] manufacturers to implement the architectural paint stewardship program described in Section 48703." Cal. Pub. Res. Code § 48701(h).

developed the Program to reduce the generation of leftover paint, promote its reuse and recycling, and properly manage unwanted leftover paint. *Id.* ¶ 7. PaintCare is the only stewardship organization that submitted a paint stewardship plan to CalRecycle, the state agency responsible for overseeing the Program, to implement a paint recovery program. *Id.* ¶ 8. PaintCare works with the other named Defendants, Clean Harbors and Stericycle, who transport post-consumer paint collected under the Program. *Id.* ¶ 13. The Complaint refers to Clean Harbors and Stericycle as "haulers" for the Program. *Id.*

Plaintiff GreenCycle was founded in 2012 and was both a processor and manufacturer of latex paint. *Id.* ¶ 11. It had a latex paint recycling facility that opened in September 2012, in Oakland, California. *Id.* ¶¶ 11, 15. Prior to its opening, Plaintiff's Chief Executive Officer, Alan Beilke, entered into discussions with PaintCare about participating in the Program as a latex paint processor. *Id.* ¶¶ 12-14. PaintCare introduced Plaintiff to Stericycle and Clean Harbors and advised Plaintiff to go through these haulers to facilitate receipt of paint under the Program. *Id.* ¶ 13. Plaintiff was ready to receive and start recycling paint in November 2012. *Id.* ¶ 15.

Over the next 3 years, Plaintiff tried to get approval from Clean Harbors and Stericycle to begin recycling paint. *Id.* ¶¶ 14-25. During that time, Mr. Beilke attempted to arrange audits, which Stericycle and Clean Harbors told Plaintiff were required before it could receive any used paint under the Program. *Id.* ¶ 14. Plaintiff alleges PaintCare told it that the haulers needed to provide Plaintiff with approval but meanwhile Clean Harbors told Plaintiff to get approval from PaintCare. *Id.* ¶¶ 13-14. Eventually, in April 2014, Stericycle approved Plaintiff as a recycler for used latex paint hauled by Stericycle, but over the following 8 months after obtaining approval, Plaintiff did not receive any used paint from Stericycle or any other hauler under the Program. *Id.* ¶ 19. In January 2015 and then March 2015, however, Plaintiff did receive two truckloads of paint under the Program, but was ultimately forced to shut down in April 2015 "after realizing that it was not going to receive paint[.]" *Id.* ¶ 25.

According to Plaintiff, "although PaintCare represented that it was not involved in determining the recyclers that received shipments of paint under the PaintCare program from the only two haulers, PaintCare was in fact conspiring with the haulers to unfairly and illegally

1  exclude GreenCycle from the market." *Id.* ¶ 22.  Plaintiff alleges it is not alone in being excluded
2  from this market by the Defendants, noting that another used paint processor in Dixon, California
3  was likewise told it would never receive paint from PaintCare. *Id.* ¶ 23.  Thus Plaintiff alleges
4  Defendants entered into an agreement "to prevent additional recycling facilities from entering the
5  market[,]" and instead "shipped used latex paint to facilities they owned and/or controlled[.]" *Id.*
6  ¶¶ 30, 31.  Plaintiff alleges it lost profits and was forced to shut down as a result of Defendants'
7  actions. *Id.* ¶ 31.
8      Plaintiff filed this action in the Superior Court of California, County of Alameda, on
9  August 3, 2015, alleging claims for (1) unfair competition against Defendants;[2] (2) aiding and
10 abetting unfair competition against Stericycle and Clean Harbors; (3) a violation of California's
11 Cartwright Act; and (4) fraud.  Compl. ¶¶ 29-48.  Clean Harbors subsequently removed this action
12 to this Court on the basis of diversity on September 4, 2015.  Dkt. No. 1.  All Defendants now
13 challenge Plaintiff's Complaint, contending Plaintiff is unable to state a claim against them.

## LEGAL STANDARD

15     Rule 8(a) requires that a complaint contain a "short and plain statement of the claim
16 showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A complaint must therefore
17 provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Bell Atl.*
18 *Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted).
19     A court may dismiss a complaint under Rule 12(b)(6) when it does not contain enough
20 facts to state a claim to relief that is plausible on its face. *Id.* at 570.  "A claim has facial
21 plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable
22 inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,
23 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for
24 more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550

---

[2] Although the Complaint does not identify Plaintiff's unfair competition claim as one made under California's Unfair Competition Law ("UCL"), California Business and Professions Code section 17200, the parties appear to be in agreement that the UCL is the statute that forms the basis this claim.

1   U.S. at 557).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

2   detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to

3   relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a

4   cause of action will not do.  Factual allegations must be enough to raise a right to relief above the

5   speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

6         In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as

7   true and construe them in the light most favorable to the plaintiff.  *Id.* at 550; *Erickson v. Pardus*,

8   551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007).  In

9   addition, courts may consider documents attached to the complaint.  *Parks Sch. of Bus., Inc. v.*

10  *Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).

11        If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no

12  request to amend the pleading was made, unless it determines that the pleading could not possibly

13  be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en

14  banc) (internal quotations and citations omitted).  However, the Court may deny leave to amend

15  for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the

16  movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice

17  to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."

18  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v.*

19  *Davis*, 371 U.S. 178, 182 (1962)).

**DISCUSSION**

21        Defendants challenge all four of Plaintiff's claims.  First, PaintCare argues Plaintiff's

22  claims are barred by the Safe Harbor Provision of Public Resources Code section 48706, which it

23  contends protects it from Plaintiff's UCL and Cartwright Act claims.  PaintCare Mot. at 6-7.

24  Neither Stericycle nor Clean Harbors suggest they are protected under the Safe Harbor Provision[3]

25  but instead attack Plaintiff's claims on their merits.  PaintCare likewise challenges the separate

26  claims and the supporting allegations.

---

[3] Stericycle explicitly notes that provision does "not apply to Stericycle."  Stericycle Joinder at 1-2.

As an initial matter, no court, neither state nor federal, has previously considered this particular Safe Harbor Provision or interpreted its limitations or exceptions. The parties did not submit any legislative history or other materials to assist the Court in considering the provision's applicability in this instance. In any event, as noted below, the Court has not found that Plaintiff presently states a claim for either its Cartwright Act or UCL claims. Accordingly, the Court does not reach the issue of whether the Safe Harbor Provision applies; however, as described below, the Court has granted Plaintiff leave to amend its claims. Accordingly, should Plaintiff choose to amend, in the next round of briefing the Court expects the parties to provide more legislative history and other materials about this Safe Harbor Provision that may assist the Court in interpreting the statute.

The Court now addresses Defendants' challenges to Plaintiff's individual claims.

## A.   Cartwright Act Claim

Defendants seek dismissal of Plaintiff's claim under California's Cartwright Act, which makes unlawful any agreements having the effect of restraining trade. Cal. Bus. & Prof. Code §§ 16720, et seq. The Cartwright Act makes unlawful a "trust," defined as a combination of capital, skill, or acts by two or more persons or businesses to restrict trade, limit production, increase or fix prices, or prevent competition. Cal. Bus. & Prof. Code §§ 16702, 16720 et seq. The California Supreme Court has stated that the purpose of the Cartwright Act is to prevent any action which "has as its *purpose* or *effect* an unreasonable restraint of trade." *Corwin v. L.A. Newspaper Serv. Bureau, Inc.*, 22 Cal. 3d 302, 314 (1978) (emphasis in original) (citations omitted); *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1000 (9th Cir. 2008) (recognizing same).

Defendants oppose Plaintiff's Cartwright Act claim by contending, among other things, that there are alternative, innocent explanations for the actions listed in Plaintiff's Complaint and that Plaintiff has made conclusory allegations that fall short of showing an antitrust violation. *See* PaintCare Mot. 8-12; Clean Harbors Mot. at 6. Plaintiff, in turn, contends it "has pleaded with particularity the existence of an agreement between the defendants to exclude GreenCycle from receiving shipments of paint under the Architectural Paint Recovery Program." Opp'n at 7. According to Plaintiff, "[t]he complaint sufficiently alleges a group boycott involving

GreenCycle's competitors, which is a per se violation of the Cartwright Act." *Id.* But additionally, Plaintiff notes the Complaint also alleges a *vertical* restraint of trade claim[4] under the Cartwright Act, noting "even if the court were to ignore the fact that the defendant-haulers also operate facilities that receive and process post-consumer paint under the Program, the allegations show an attempt by entities that operated at different levels of distribution to restrain trade." *Id.* at 9. Plaintiff asserts "defendants sought to limit competition in order to suppress the amount of paint in the marketplace, which competes with newly manufactured paint supplied by the members of the American Coatings Association, the entity behind PaintCare." *Id.* (citing Compl. ¶¶ 2, 40).

As the Ninth Circuit has recognized, "[t]he analysis under [the Cartwright Act] mirrors the analysis under federal law because [it] was modeled after the Sherman Act." *Cty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1160 (9th Cir. 2001) (citations omitted); *Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1131 n.5 (9th Cir. 2015) ("Because analysis under the Cartwright Act is identical to that under the Sherman Act, we also affirm the district court's dismissal of the Cartwright Act claim."). Accordingly, "California courts" demand a "high degree of particularity in the pleading of Cartwright Act violations." *Facebook Inc. v. Power Ventures, Inc.*, 2009 WL 3429568, at *2 (N.D. Cal. Oct. 22, 2009) (quotation omitted) (discussing and applying *Twombly* to Cartwright claims). "It is not enough merely to include conclusory allegations that certain actions were the result of a conspiracy; the plaintiff must allege facts that make the conclusion plausible." *Name.Space*, 795 F.3d at 1129 (citing *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047-48 (9th Cir. 2008)). "This standard does not impose a 'probability requirement,' but 'simply calls for enough fact to raise a reasonable

---

[4] Antitrust law differentiates between vertical and horizontal price restraints. "Restraints imposed by agreement between competitors have traditionally been denominated as horizontal restraints, and those imposed by agreement between firms at different levels of distribution as vertical restraints." *Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 730 (1988) (footnote omitted). With limited exceptions, horizontal agreements are *per se* unlawful, whereas vertical restraints are unlawful only if an assessment of market effects, known as the "rule of reason" analysis, reveals they unreasonably restrain trade. *See Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886, 907 (2007) (citations omitted); *see also McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 811 n.3 (9th Cir. 1988) (recognizing that generally "[t]he per se analysis is applied to practices that are presumptively illegal, such as. . . *group boycotts* and concerted refusals to deal . . . ." (emphasis added; citations omitted)).

expectation that discovery will reveal evidence of illegal agreement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

As such, "Cartwright Act claims are properly dismissed 'where the complaint makes conclusory allegations of a combination and does not allege with factual particularity that separate entities maintaining separate and independent interests combined for the purpose to restrain trade.'" *In re Netflix Antitrust Litig.*, 506 F. Supp. 2d 308, 320 (N.D. Cal. 2007) (quoting *Freeman v. San Diego Ass'n of Realtors*, 77 Cal. App. 4th 171, 189 (1999)).  Among other things, when faced with two possible explanations for a defendant's behavior, a plaintiff cannot offer allegations that are "merely consistent with" their favored explanation but are also consistent with the defendant's alternative explanation.  *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (citing *Iqbal*, 556 U.S. at 678).  "Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, . . . in order to render plaintiffs' allegations plausible within the meaning of *Iqbal* and *Twombly*." *Id.*  But where a plaintiff's allegations are stuck in "neutral territory," i.e., they do not tend to exclude the innocent explanation, such allegations fall short of what *Iqbal* and *Twombly* require.  *See id.* at 1108-10 (affirming dismissal of Securities Act claim where plaintiffs' allegations were "merely consistent with both their explanation and the defendants' competing explanation"); *see also Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1116 (9th Cir. 2014), *cert. denied sub nom. Gonzalez v. Planned Parenthood of L.A., Cal.*, 135 S. Ct. 2313 (2015) (affirming dismissal where plaintiff's allegation that defendant knowingly submitted false claims was only "merely *possible* rather than plausible," and could not overcome the plausible and obvious explanation that defendant did not knowingly submit false claims (quotation omitted; emphasis in original)); *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (explaining that courts "must consider" "obvious alternative explanation[s]" for a defendant's behavior when analyzing plausibility); *Somers v. Apple, Inc.*, 729 F.3d 953, 965 (9th Cir. 2013) (affirming dismissal of antitrust claim in part due to an obvious alternative explanation for music pricing).

Plaintiff assigns a nefarious motive to the fact that Defendants worked very little with Plaintiff since it was established, but this motive and any related agreement are not supported by

7

plausible allegations at this point. First, Plaintiff has not adequately alleged a conspiracy exists. *See William O. Gilley Enters., Inc. v. Atl. Richfield Co.*, 588 F.3d 659, 663 (9th Cir. 2009) ("Whether a plaintiff pursues a per se claim or a rule of reason claim . . . , the first requirement is to allege a 'contract, combination in the form of trust or otherwise, or conspiracy.'").[5] Identifying the existence and nature of a conspiracy requires determining whether the evidence "reasonably tends to prove that the [defendant] and others had a conscious commitment to a common scheme designed to achieve an unlawful objective." *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984) (internal quotation marks omitted). Parallel action is not, by itself, sufficient to prove the existence of a conspiracy; such behavior could be the result of "coincidence, independent responses to common stimuli, or mere interdependence unaided by an advance understanding among the parties." *Twombly*, 550 U.S. at 556 n.4 (internal quotation marks omitted). On a motion to dismiss, a plaintiff's complaint must provide "plausible grounds to infer an agreement[,]" which "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Id.* at 556; 564.

Plaintiff has alleged that Defendants formed a conspiracy through a group boycott to exclude competitors, including Plaintiff, from the market. Opp'n at 7. But Plaintiff has not plausibility alleged that it competed with Defendants. While Plaintiff alleges the hauler Defendants and Plaintiff were competitors, the closest it comes to supporting this claim is the allegation the hauler Defendants "shipped used latex paint to facilities they owned and/or controlled[.]" Compl. ¶ 31. But Defendants undermine this motive by submitting judicially noticeable documents showing that none of the hauler Defendants processed latex paint (the only type of paint Plaintiff processed); rather, the hauler Defendants only process oil-based paints.

---

[5] As indicated in the previous footnote, antitrust plaintiffs may prosecute claims "under one of two theories of liability." *Solyndra Residual Tr., by & through Neilson v. Suntech Power Holdings Co.*, 62 F. Supp. 3d 1027, 1039 (N.D. Cal. 2014). "First, under the rule of reason," where "the factfinder 'weighs all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition.'" *Id.* (quoting *Leegin Creative Leather Prods*, 551 U.S. at 885). "Second, antitrust plaintiffs can allege that a restraint is illegal per se because it is 'so plainly anticompetitive that no elaborate study of the industry is needed to establish their illegality.'" *Id.* (quoting *Nat'l Soc. of Prof'l Eng'rs v. United States*, 435 U.S. 679, 692 (1978)).

8

Req. For Judicial Notice ("RJN"), Ex. C at 13, Dkt. No. 26-4; Ex. E at 19, Dkt. No. 26-6.[6] No other facts support that these hauler Defendants and Plaintiff were competitors.

And there are no allegations showing Plaintiff and PaintCare were competitors. PaintCare contends it "has no interest in any recycling facility," PaintCare Reply at 10, and the only allegation Plaintiff provides in support is the statement that "defendants sought to limit competition in order to suppress the amount of paint in the marketplace, which competes with newly manufactured paint supplied by the members of the American Coatings Association, the entity behind PaintCare." *Id.*; Compl. ¶¶ 2, 40. Plaintiff does not explain how this allegation fits with its other arguments, however—particularly as related to the hauler Defendants, whom Plaintiff has alleged wanted to exclude competitors so that they could keep Plaintiff's potential share of the market, which in turn would seem to maintain the amount of recycled paint in the market and likewise create a disincentive for PaintCare to direct business to those haulers—the opposite of what Plaintiff has alleged. Additionally, this allegation lacks plausibility as it appears to run counter to the whole purpose of PaintCare's mission under the Program and for which CalRecycle has selected PaintCare. Perhaps there are more facts Plaintiff can allege to support its claims but at this point Plaintiff's allegations that Defendants competed with Plaintiff and thus formed a conspiracy to exclude Plaintiff from the market lack plausibility.

Even under Plaintiff's second theory that Defendants formed a vertical restraint of trade, its allegations still do not provide enough factual matter for the Court to infer a conspiracy between Defendants. Ultimately, as the Ninth Circuit explained, courts "cannot infer a conspiracy based on speculation that [defendants] must have conspired to restrain trade simply because the system they

---

[6] Pursuant to Federal Rule of Evidence 201(b)(2), PaintCare requests the Court take judicial notice of various documents, including Exhibits C and E, which are PaintCare's Annual Reports from 2013 and 2014 respectively. Dkt. No. 26-1. Plaintiff did not object to PaintCare's request for judicial notice and even relied on these two Annual Reports in its Opposition. *See* Opp'n at 3. The Court has reviewed Exhibits C and E and agrees with PaintCare that it may properly take judicial notice of them as information available in the public record and obtained from government websites. *See MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) ("On a motion to dismiss, we may take judicial notice of matters of public record outside the pleadings." (citation omitted)); *see also Preciado v. Wells Fargo Home Mortg.*, 2013 WL 1899929, at *3 (N.D. Cal. May 7, 2013) (taking judicial notice of information available on official government websites). The Court does not rely on the other exhibits for which PaintCare requested judicial notice and as such will not take judicial notice of them at this time.

adopted made it difficult for [the plaintiff] to carry out its business plans." *Name.Space*, 795 F.3d at 1131 (footnote omitted). This is particularly true when there have been ongoing relationships with coworkers and where the plaintiff business is comparatively untested. *See id.* ("We cannot infer an illegal agreement with outside interests simply because ICANN's rational business decisions favor the status quo rather than name.space's untested alternative business model.").

Second, and along the same lines, there are potentially innocent explanations for Defendants' conduct. As PaintCare points out, "plaintiff does not allege any facts that would exclude the possibility that the defendants made this decision [not to work with Plaintiff] based upon (1) GreenCycle's lack of any prior experience in recycling latex paint, *see* Compl. ¶ 15, and (2) defendants' existing track record of success with the other paint recyclers." PaintCare Mot. at 9-10. Although Plaintiff argues *Name.Space* and related cases requiring consideration of alternative, innocent explanations are inapposite because Plaintiff's Complaint explicitly alleges the existence of a conspiracy, *see* Opp'n at 10, this argument misses the point. Simply providing a conclusory allegation that a conspiracy exists is not enough—there must be plausible factual allegations on which to substantiate such a conspiracy. *Twombly*, 550 U.S. at 555 (holding that a threadbare assertion of an unlawful agreement is a "legal conclusion" not entitled to an assumption of truth); *William O. Gilley Enters.*, 588 F.3d at 659 ("claimants must plead not just ultimate facts (such as a conspiracy), but evidentiary facts" in support of the elements of their claims). Plaintiff's current allegations do not tend to exclude the innocent, competing explanations, rendering its Cartwright Act claim unsustainable.

Finally, Plaintiff's theory of antitrust injury is unclear. "[T]he Cartwright Act, like all antitrust laws, is about the protection of *competition*, not *competitors*." *Asahi Kasei Pharma Corp. v. CoTherix, Inc.*, 204 Cal. App. 4th 1, 20 (2012) (internal quotations and citations omitted; emphasis in original). While Plaintiff alleges facts supporting that it suffered injuries personally, it is unclear how Plaintiff alleges Defendants' conduct injured competition. *See Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1198 (9th Cir. 2012) ("[P]laintiffs must plead an injury to competition beyond the impact on the plaintiffs themselves." (citing *McGlinchy*, 845 F.2d at 811)). Plaintiff suggests that because it alleges a group boycott claim, it "does not need to allege

10

market-wide injury to competition." Opp'n at 7. This is not the case. Even if Plaintiff were able to make out a group boycott claim, i.e., a per se antitrust violation, "the antitrust injury requirement applies to cases alleging conduct that is per se unlawful as well as to cases governed by the rule of reason." *Flagship Theatres of Palm Desert, LLC v. Century Theatres, Inc.*, 198 Cal. App. 4th 1366, 1378 (2011), *as modified on denial of reh'g* (Sept. 29, 2011); *see also Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 341 (1990)) (rejecting "suggestion that no antitrust injury need be shown where a per se violation is involved").

The question then is whether Plaintiff has otherwise articulated a theory of antitrust injury in its Complaint. "Antitrust injury is made up of four elements: '(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent.'" *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 352 F.3d 367, 372 (9th Cir. 2003) (quotation omitted). The Ninth Circuit has also added a fifth requirement, that the injured party be "a participant in the same market as the alleged malefactors . . . In other words, the party alleging the injury must be either a consumer of the alleged violator's goods or services or a competitor of the alleged violator in the restrained market." *Id.* (quotations omitted). "The antitrust injury requirement ensures that a plaintiff can recover only if the loss stems from a competition-*reducing* aspect or effect of the defendant's behavior." *Flagship Theatres*, 198 Cal. App. 4th at 1379 (emphasis in original) (quoting *Atl. Richfield Co.*, 495 U.S. at 344). For instance, "[v]ertical agreements that foreclose competitors from entering or competing in a market can injure competition by reducing the competitive threat those competitors would pose." *Id.* Additionally, "[s]ome types of vertical agreements can also injure competition by facilitating horizontal collusion." *Id.*

As noted above, Plaintiff has not alleged plausible allegations that Defendants formed a conspiracy to foreclose Plaintiff from entering the market, and there are no allegations plausibly supporting that Defendants and Plaintiff were competitors, which would give them a motive to restrict Plaintiff's access to the market. Again, the closest Plaintiff comes to alleging facts in support of such an argument is that "defendants sought to limit competition in order to suppress the amount of paint in the marketplace, which competes with newly manufactured paint supplied

by the members of the American Coatings Association, the entity behind PaintCare." Opp'n at 9; *see* Compl. ¶¶ 2, 40. But Plaintiff's Complaint lacks adequate factual background to be able to understand how Defendants might have suppressed the amount of paint in the marketplace, or how this theory correlates with Plaintiff's other theory that the hauler Defendants wanted more recycling/processing business for themselves. The Court will not speculate in the face of presently unclear allegations about if and how both of these theories may co-exist. Moreover, there are no facts showing how Plaintiff's presence in the market might have otherwise increased the amount of paint available to consumers. Finally, Plaintiff asserts "defendants increased the cost to consumers through increased transportation costs for recycling and processing paint," Opp'n at 11, but Plaintiff has not explained how consumers interact with Defendants or how Defendants might pass along the costs to consumers. Even assuming Plaintiff can ultimately allege facts supporting an antitrust violation, Plaintiff must clearly articulate how the violation harms competition and how the system at issue works; it has not done so at this point.

Given the foregoing, the Court cannot find Plaintiff has stated a claim against Defendants for a Cartwright Act claim at this time and dismisses this claim. However, the Court will grant Plaintiff leave to amend so that it may more clearly articulate its antitrust theory and what plausible facts support the elements of its claim. In doing so, Plaintiff should be particularly mindful that "[w]hen considering plausibility, courts must also consider an 'obvious alternative explanation' for defendant's behavior." *Eclectic Props.*, 751 F.3d at 996 (quotation omitted). Plaintiff may also add its claims for all available relief under the Cartwright Act. *See* Opp'n at 11 (requesting leave to amend to include prayer for treble damages and attorneys' fees).

**B.    Fraud**

Defendants next challenge Plaintiff's fraud claim, contending (1) Plaintiff's claim is not pled with the requisite particularity under Rule 9(b); and (2) Plaintiff has not plausibly alleged Defendants misrepresented a fact or that Plaintiff justifiably relied on any of their purported misrepresentations. PaintCare Mot. at 12-15; Clean Harbors Mot. at 3-5. PaintCare points out that Plaintiff alleges PaintCare told it in April 2012 that there would be enough latex paint such that Plaintiff would have no problem receiving paint under the program. PaintCare Mot. at 13

12

1  (citing Compl. ¶ 2). But PaintCare also points out that it made this statement before Plaintiff even
2  built its recycling facility, and furthermore, "[a]s alleged in the Complaint, in every subsequent
3  communication with the plaintiff, PaintCare stated that GreenCycle would not receive shipments
4  of paint unless its recycling facility was approved by the haulers." *Id.* (citing Compl. ¶¶ 13-14,
5  17-18, 21, 24). PaintCare emphasizes Plaintiff's allegations that PaintCare expressed "a
6  pessimistic view of GreenCycle's chances of obtaining approval from Stericycle." *Id.* at 14
7  (quoting Compl. ¶ 17). It notes that while Plaintiff may not have believed PaintCare's statements
8  at the time, Plaintiff's "refusal to accept PaintCare's warnings certainly cannot sustain the
9  diametrically opposite argument that PaintCare made promises upon which GreenCycle could
10 justifiably rely." *Id.* Meanwhile, Clean Harbors contends Plaintiff's fraud claim is broadly
11 alleged against all Defendants with little specificity about what representations Clean Harbors
12 made that could constitute fraudulent behavior. Clean Harbors Mot. at 3.

13 According to Plaintiff, it has alleged multiple specific statements made by Defendants to
14 Plaintiff that "were intended to induce GreenCycle to enter the market for recycling of post-
15 consumer paint." Opp'n at 12 (citing Comp. ¶¶ 12, 14, 18, 21). Plaintiff asserts that at no time
16 did Defendants ever state that they were not going to provide GreenCycle with post-consumer
17 paint, and when Plaintiff inquired about the delays, the haulers pointed to PaintCare and PaintCare
18 pointed to the haulers. *Id.* at 13. As in its antitrust claim, Plaintiff alleges Defendants had agreed
19 to not allow any other recycling facilities to enter the market for post-consumer paint, but that they
20 never informed Plaintiff of this agreement. *Id.*

21 The elements of fraud in California are: "(1) a misrepresentation (false representation,
22 concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to
23 induce reliance; (4) justifiable reliance; and (5) resulting damage." *Robinson Helicopter Co. v.*
24 *Dana Corp.*, 34 Cal. 4th 979, 990 (2004). "The intent to defraud may be inferred from a
25 defendant's statements and conduct." *Eclectic Props.*, 751 F.3d at 997 (citing *United States v.*
26 *Peters*, 962 F.2d 1410, 1414 (9th Cir. 1992)). "In the absence of direct evidence of intent, the
27 party asserting fraud must first prove 'the existence of a scheme which was reasonably calculated
28 to deceive persons of ordinary prudence and comprehension,' and then, 'by examining the scheme

itself' the court may infer a defendant's specific intent to defraud." *Id.* (quoting *United States v. Green*, 745 F.2d 1205, 1207 (9th Cir. 1984)).

Given these elements, the Court agrees with Defendants that there are a variety of deficiencies in Plaintiff's fraud claim as currently pled. The problems are interrelated in that Plaintiff's allegations do not demonstrate justifiable reliance on its part or that Defendants intended to defraud Plaintiff or knew that they were making false statements to Plaintiff when they indicated it could become a processor for recycling latex paint. As pled, the allegations indicate that Plaintiff was aware that there was no promise it would become a processor; rather, the allegations show Plaintiff understood that there was enough business for it to become a processor, but it would have to be approved and audited prior to beginning such operations. But as noted by PaintCare, Plaintiff had not even built its facility—a prerequisite to conducting an audit—when it first began communicating with Defendants. *See* Compl. ¶ 14 (indicating that at the meeting in September 2012 with PaintCare, Clean Harbors, and Stericycle, a Stericycle official told Plaintiff an audit was necessary before Plaintiff could be approved to process paint, which was not possible until its recycling facility was set up). And while Plaintiff finished building the facility in September 2012, according to its own allegations, it was only ready to receive and process paint in November 2012. *Id.* ¶ 15. Defendants' representations about Plaintiff's ability to process paint through the Program were thus contingent on audits of this facility. *See Cansino v. Bank of Am.*, 224 Cal. App. 4th 1462, 1469-71 (2014) (explaining that predictions as to future events may not be actionable in fraud, particularly where "the future state" of a something is unknown, and "[a]ny future [] forecast must be regarded not as fact but as prediction or speculation").

After opening its facility, Plaintiff vaguely alleges it made "repeated efforts" to obtain paint shipments from Clean Harbors, but it does not allege any specific communications they shared between September 2012, when the facility opened, and August 2014, when Clean Harbors contacted Plaintiff about evaluating its facility. Compl. ¶ 21. There are no allegations that Clean Harbors made any representations to Plaintiff during this period that Plaintiff relied on, and in the August 2014 discussions, Plaintiff merely alleges Clean Harbors told Plaintiff it would send an audit package, but Plaintiff did not receive such a package. *Id.* Plaintiff does not explain how it

14

relied on these representations and was then damaged by them, or that Clean Harbors intended to induce Plaintiff's reliance.

Likewise, while there are more allegations about PaintCare's and Stericycle's communications with Plaintiff, it is still unclear when several of the communications took place, for instance, when PaintCare allegedly expressed a "pessimistic view" to Plaintiff that it would be approved as a processor. *Id.* ¶ 17. Furthermore, Plaintiff asserts Defendants "misrepresented" that it "would receive used latex paint if it met certain requirements[,]" *id.* ¶ 36, but Plaintiff has not alleged facts showing how these statements constitute misrepresentations or that Defendants intended to defraud Plaintiff by making them, particularly when they actually began shipping paint to Plaintiff in early 2015. Finally, it is not clear what motivation Defendants would have had to induce Plaintiff to go through the approval process if they had no intention of working with Plaintiff. Something more is needed to make Plaintiff's allegations plausible and adequate under Rule 9(b). *See* Fed. R. Civ. P. 9(b) (requiring "a party . . . state with particularity the circumstances constituting fraud . . . .").

That said, Plaintiff may be able to allege plausible and particular facts to demonstrate Defendants defrauded Plaintiff; accordingly, while the Court dismisses Plaintiff's fraud claim, it does so with leave to amend.

**C.     Unfair Competition Claims**

Defendants also challenge Plaintiff's unfair competition claims on the grounds that Plaintiff has not shown that (1) any of Defendants' conduct was "unlawful" or "fraud" under another statute or law, or (2) that Defendant's conduct was unfair. PaintCare Mot. at 15; Clean Harbors Mot. at 7. Additionally, Clean Harbors asserts that Plaintiff does not have standing to bring a UCL claim against Clean Harbors as it has not shown how it lost money or property as a "direct result" of Clean Harbor's "specific conduct[.]" Clean Harbors Mot. at 6-7.

California's UCL proscribes three types of unfair competition: "practices which are unlawful, unfair or fraudulent." *In re Tobacco II Cases*, 46 Cal. 4th 298, 311 (2009) (internal quotation marks and citation omitted); *see also* Cal. Bus. & Prof. Code § 17200 (defining unfair competition to include "any unlawful, unfair or fraudulent business act or practice"). "Each prong

of the UCL is a separate and distinct theory of liability," and "an independent basis for relief." *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007) (citation omitted).

### 1. Unlawful Prong

With respect to the UCL's unlawful prong, the California Supreme Court has held: "By proscribing 'any unlawful' business practice, § 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (quotations omitted). In other words, claims raised under the UCL's unlawful prong rise or fall with the Court's determination of liability with respect to the underlying violation. *See Krantz v. BT Visual Images*, 89 Cal. App. 4th 164, 178 (2001). Here, as noted above, the Court has not found that Plaintiff has alleged plausible facts supporting a violation of another law; as such, Plaintiff's UCL claims premised on the "unlawful" prong must be dismissed, but with leave to amend in the event Plaintiff can allege plausible facts to support its antitrust or fraud claim.

### 2. Unfair Prong

"[W]ith respect to business-competitor cases, to state a claim under the UCL's 'unfair' prong the alleged unfairness must 'be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1136 (9th Cir. 2014) (quoting *Cel-Tech Commc'ns*, 20 Cal. 4th at 186-87 (an act or practice is "unfair" under the UCL only if the conduct "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.")). Additionally, "where the same conduct alleged to be unfair under the UCL is also alleged to be a violation of another law, the UCL claim rises or falls with the other claims." *Hicks v. PGA Tour, Inc.*, ___ F. Supp. 3d ___, 2016 WL 928728, at *7 (N.D. Cal. Feb. 9, 2016) (citation omitted). Indeed, California Courts of Appeal have recognized that "[t]o permit a separate inquiry into essentially the same question under the unfair competition law would only invite conflict and uncertainty[.]" *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2001); *Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224, 1240 (2007) (recognizing same).

Plaintiff appears to contend that Defendants' acts of telling "GreenCycle it would receive post-consumer paint" and leading "it through a lengthy and detailed 'audit process'" while never "intend[ing] to approve GreenCycle" violated the policy or spirit of a law as these acts "violated the stated goals of the Program, increase costs to consumers, increase emissions from additional transportation, result in more paint being dumped in landfills and create an unfair playing field in the post-consumer paint market." Opp'n at 15-16. Additionally, Plaintiff asserts that Defendants' actions "violate the spirit of free competition in the marketplace[,]" noting that "Defendants control the market for post-consumer paint and are not only excluding local recycling options, but are creating a lengthy and unnecessary burden on new business." *Id.* at 16. Plaintiff explains that "PaintCare is the only stewardship organization authorized to administer the used-paint recycling program in California and the other defendants are the only transport companies with which PaintCare contracts." *Id.* at 15. It asserts that PaintCare and the other Defendants' positions of control in the marketplace require specific consideration by the Court under *Cel-Tech*. *Id.* (citing *Cel-Tech Commc'ns*, 20 Cal. 4th at 190) ("Given L.A. Cellular's government-protected position . . . , the fairness of its below-cost sales of cellular equipment requires careful scrutiny.").

Having carefully reviewed Plaintiff's Complaint, the Court finds Plaintiff's allegations do not provide enough plausible facts to support Plaintiff's UCL claims at this time. First, to the extent Plaintiff's UCL claims overlap with its antitrust and fraud allegations, which the Court has found presently fail to state a claim, the Court agrees with Defendants that under *Chavez v. Whirlpool Corporation*, Plaintiff's UCL claims premised on the "unfair prong" also fail as a matter of law. *See Hicks*, 2016 WL 928728, at *7 ("Because the conduct the caddies assert is unfair under the UCL overlaps completely with the allegations the Court has held fails to state a claim for breach of contract, misappropriation of likeness, and antitrust violations, the caddies' UCL claim fails as a matter of law too." (citation omitted)).

Second, the only allegations Plaintiff presents that do not overlap with its antitrust claims are related to allegations that the Program was developed in part to "provide a uniform competitive business environment to all architectural paint manufacturers[,]" Compl. ¶¶ 10, 30 (citing Cal. Code Regs. tit. 14, § 18950), and that Defendants "failed to [] meet the statutory and

regulatory requirements to promote the reuse of used paint and manage the end-of-life of unused paint in an environmentally sound fashion" by "increase[ing] truck travel and transportation of used latex paint" resulting in "increased emissions, adverse environmental impacts, increased costs for consumers, additional spillage and waste" and "land-based disposal of paint that is otherwise prohibited in California." *Id.* ¶ 31.  The problem with these allegations, however, is that they are conclusory and do not clarify which Defendant did what.  While Plaintiff has alleged facts showing that it had a difficult time procuring business under the Program, it has not alleged how Defendants' conduct failed to provide a uniform competitive business environment or how specifically they failed to meet the statutory and regulatory requirements.  *See Scripps Clinic v. Superior Ct.*, 108 Cal. App. 4th 917, 940 (2003) (UCL unfair prong claim "must be 'tethered' to specific constitutional, statutory or regulatory provisions." (citations omitted)).  Finally, in its Opposition, Plaintiff asserts Defendants "are creating a lengthy and unnecessary burden on new business," Opp'n at 16, but it has alleged no facts demonstrating this to be the case.  The only allegation supporting this contention is that Plaintiff dealt with a lengthy process navigating how to obtain business through the program.  It appears, however, from judicially noticeable documents, that the Program added new paint recyclers between 2013 and 2014.  RJN Exs. C & E.  The fact that Plaintiff was not one of them is not enough to plausibly establish Defendants violated the policy or spirit of a law or otherwise harmed competition.

        3.        Fraudulent Prong

"To establish an unfair competition claim under the fraudulent prong, plaintiffs must show that [the defendant's] representations were false or were likely to have misled 'reasonable consumers.'"  *Belton*, 151 Cal. App. 4th at 1241 (quotation omitted)).  "The standard for finding a likelihood of deception is that of a reasonable consumer who is neither the most vigilant and suspicious of advertising claims nor the most unwary and unsophisticated, but instead is 'the ordinary consumer within the target population.'"  *Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1137 (N.D. Cal. 2014) (quotations omitted).  As PaintCare points out in its Reply, Plaintiff's fraud claims are primarily premised on alleged misrepresentations Defendants made specifically to Plaintiff—not to consumers.  Those claims are not presently viable as addressed above.  But

18

Plaintiff also indicates Defendants' actions "misled the general public with regard to the costs and benefits of the Architectural Paint Recovery Program[.]" Compl. ¶ 32. Plaintiff is not clear about which Defendants made what misrepresentations to the public or how specifically they misled consumers regarding the costs of the Program or its benefits. *See* Fed. R. Civ. P. 9(b) ("a party must state with particularity the circumstances constituting fraud . . . ."). Without more, it cannot maintain its UCL claims under the fraud prong.

### 4. Standing

Finally, as to standing, since the passage of Proposition 64 in 2004, a private individual has standing to bring a UCL action only if he or she "has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. "The phrase 'as a result of' in its plain and ordinary sense means 'caused by' and requires a showing of a causal connection or reliance . . . ." *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 326887 (2011) (citation omitted). Clean Harbors has questioned Plaintiff's standing to bring a UCL claim if Plaintiff cannot show it lost money or property as a result of the Defendants' acts. Clean Harbors Mot. at 6-7. As the nature of Defendants' acts is currently unclear, it is premature to find that Plaintiff cannot allege facts to show how Defendants' conduct caused it to lose money or property. Nonetheless, in granting leave to amend on Plaintiff's UCL claim, the Court urges Plaintiff to plead factual content that allows it to draw the reasonable inference Plaintiff lost money or property as a result of Defendants' acts. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

## CONCLUSION

Based on the foregoing analysis, the Court **GRANTS** Defendants' Motions to Dismiss but **WITH LEAVE TO AMEND** on all claims. Plaintiff shall file an amended complaint **by May 6, 2016** or the Clerk of Court will close this case.

**IT IS SO ORDERED.**

Dated: April 8, 2016

_____
MARIA-ELENA JAMES
United States Magistrate Judge