UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREENCYCLE PAINT, INC., <br> Plaintiff, <br> v. <br> PAINTCARE, INC., et al., <br> Defendants. | Case No. 15-cv-04059-MEJ <br><br> **ORDER RE: MOTION FOR PROTECTIVE ORDER AND TO QUASH** <br><br> Re: Dkt. No. 101 |

## INTRODUCTION

Nonparty Amazon Environmental, Inc. moves for a protective order and to quash a subpoena served by Plaintiff GreenCycle Paint, Inc. Mot., Dkt. No. 101. Plaintiff filed an Opposition (Dkt. No. 103) and Amazon filed a Reply (Dkt. No. 105). Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court **VACATES** the April 5, 2018 hearing on the matter. Having considered the parties' arguments, the relevant legal authority, and the record in this case, the Court **GRANTS** the Motion.

## BACKGROUND[1]

**A.     Allegations in the First Amended Complaint**

In 2010, California enacted the Architectural Paint Recovery Program, Cal. Pub. Res. Code §§ 48700-48706, to reduce the generation of leftover paint and to promote the reuse, recycling, and proper management of paint. First Am. Compl. ("FAC") ¶ 8, Dkt. No. 48. Defendant PaintCare, Inc. is the only stewardship program to submit a plan (the "PaintCare Program") to CalRecycle, the state agency that oversees the Architectural Paint Recovery Program. *Id.* ¶ 9.

---

[1] The Court's Order re: Second Motions to Dismiss contains a detailed factual background of this action. Order at 2-5, Dkt. No. 72.

The purpose of the PaintCare Program is to require paint manufacturers to develop and implement a program to collect, transport, and process post-consumer paint to reduce the costs and environmental impact of the disposal of unused paint in California. *Id.* ¶ 13.

The PaintCare Program receives funding from consumers of architectural paint who pay an additional assessment of $0.35 to $1.60 on the paint. *Id.* ¶ 11. PaintCare receives 100% of these assessments, which it uses to pay for collection bins, training materials, transportation of paint, and paint processing. *Id.* In 2015, PaintCare received approximately $34 million in assessments. *Id.* ¶ 12. Of that, PaintCare used $2.5 million to pay its haulers, Defendants Clean Harbors and Stericycle, to pick up paint from collection sites and transport it to recycling and disposal locations. *Id.* PaintCare used the remainder of the funds to pay for administrative fees, for education and outreach, and to build a cash reserve. *Id.*

In 2012, Plaintiff built a latex paint recycling facility in Oakland, California. *Id.* ¶ 21. Plaintiff was both a processor and manufacturer of latex paint and was the only latex paint recycler in the San Francisco Bay Area. *Id.* Its facility had the capacity to recycle 100,000 pounds of paint per month and sold paint directly to the public. *Id.*

In April 2012, Plaintiff's Chief Executive Officer Alan Beilke entered into discussions with PaintCare about participating as a latex paint processor. *Id.* ¶ 22. A PaintCare representative advised Plaintiff that there was a large amount of used latex paint in California and that Plaintiff would have no problem receiving used paint under the PaintCare Program. *Id.* PaintCare also represented that recyclers had to enter into contracts with its haulers, subject to PaintCare's approval. *Id.* ¶ 23; *see id.* ¶ 24.

Ultimately, Plaintiff's efforts to secure regular shipments of latex paint under the PaintCare Program were unsuccessful. *See id.* ¶¶ 25-40. By November 2012, Plaintiff was ready to receive and process paint. *Id.* ¶ 26. Plaintiff underwent a multi-step approval process with PaintCare, Clean Harbors, and Stericycle to receive paint. During this process, Plaintiff received conflicting information regarding whose approval was needed – PaintCare's or the haulers' – and whether it would need to be audited prior to obtaining approval to participate in the program. *Id.* ¶¶ 24-25, 29, 34, 36.

2

Plaintiff did not receive any paint under the PaintCare Program until 2015, when Plaintiff received a total of two truckloads of paint. *Id.* ¶¶ 25-40. Obtaining used latex paint through the PaintCare Program was essential to Plaintiff's business operations and viability; it could not compete in the recycled paint market unless it received post-consumer paint. *Id.* Realizing it was not going to receive paint under the PaintCare Program, Plaintiff was forced to shut down its paint recycling operations in April 2015. *Id.*

Plaintiff alleges PaintCare, Clean Harbors, and Stericycle deliberately excluded Plaintiff from the recycled paint market. *Id.* ¶¶ 36-39. Recycled paint costs significantly less than virgin paint, and paint manufacturers are concerned about low-cost options being introduced into high-profit markets such as the San Francisco Bay Area. *Id.* ¶¶ 17-18. There are also no operating latex paint recycling facilities in the San Francisco Bay Area. *Id.* ¶ 19. Two of the largest facilities that receive post-consumer paint under the PaintCare Program are located in Denver, Colorado and Nashville, Illinois. *Id.* ¶¶ 19, 43. By sending post-consumer latex paint to out-of-state facilities, Defendants have prevented Bay Area consumers from accessing hundreds of thousands of gallons of recycled paint and thus have forced consumers to pay more for paint. *Id.* ¶¶ 17, 43. In addition, PaintCare pays Clean Harbors and Stericycle more for transporting used paint to out-of-state facilities; as such, there is no incentive for haulers to take paint to local recyclers, as it reduces their revenues and profits. *Id.* ¶ 19.

Plaintiff initiated this action on August 4, 2015 in the Superior Court of California, Alameda County; Clean Harbors removed it to this Court on September 4, 2015. Notice of Removal, Dkt. No. 1. On May 6, 2015, Plaintiff filed its FAC, asserting two claims: (1) violation of the Cartwright Act, Cal. Bus. & Prof. Code § 16720; and (2) Unfair Business Practices under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200. FAC ¶¶ 44-57. The Court dismissed Plaintiff's UCL claim, but allowed Plaintiff's Cartwright Act claim to proceed. *See* MTD Order.

**B.    The Subpoena**

Amazon is a "well-established recycler of various types of paint, finishes and other liquid coatings" and has facilities and retail stores in California, among other states. Mot. at 4. Amazon

3

has worked with PaintCare, as well as other sources. *Id.*

On January 26, 2018, Plaintiff served on Amazon a subpoena to testify at a deposition and to produce documents. Subpoena, Dkt. No. 102-1. Plaintiff seeks testimony and documents regarding Amazon's dealings with Defendants and Amazon's paint-processing business generally. *See id.* Plaintiff noticed the deposition for February 15, 2018. Subpoena at ECF p.1. The Subpoena was signed by William C. Acevedo, "Attorney[] for Plaintiff GreenCycle Paint, Inc." and dated January 24, 2018. *Id.* at ECF p.16; *see id.* at ECF p.7.

Discovery in this matter closes on April 10, 2018.[2] Case Management Order at 1 & ¶ C, Dkt. No. 83.

## MOTION TO QUASH

### A. Legal Standard

Federal Rule of Civil Procedure 26 provides that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). The scope of discovery under Rule 45 is the same as that permitted under Rule 26. Fed. R. Civ. P. 45 advisory committee note (1970 amendment) ("[T]he scope of discovery through a subpoena is the same as that applicable to . . . other discovery rules."). "'While discovery is a valuable right and should not be unnecessarily restricted . . . the 'necessary' restriction may be broader when a nonparty is the target of discovery.'" *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 2929439, at *3 (N.D. Cal. July 7, 2017), *motion for relief from judgment denied*, 2017 WL 6883928 (N.D. Cal. Aug. 8, 2017) (quoting *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980)).

"Subpoenas are essential to obtain discovery from nonparties. To protect local nonparties, local resolution of disputes about subpoenas is assured by the limitations of Rule 45(c) and the

---

[2] Amazon filed this Motion on February 9, 2018. No party moved to shorten time. *See* Docket; Civ. L.R. 6-3.

On March 19, 2018, Plaintiff moved to continue the discovery deadline from April 10, 2018 to May 25, 2018. Dkt. No. 115. The Court has yet to rule on that motion.

4

requirements in Rules 45(d) and (e) that motions be made in the court in which compliance is required under Rule 45(c)." Fed. R. Civ. P. 45 advisory committee note (2013 amendment); *see Lemberg Law LLC v. Hussin*, 2016 WL 3231300, at *5 (N.D. Cal. June 13, 2016) ("The Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts." (internal quotation marks omitted)). "Generally, the party moving to quash under Rule 45(c)(3) bears the burden of persuasion, but '[t]he party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings.'" *Waymo*, 2017 WL 2929439, at *2 (quoting *Optimize Tech. Sols., LLC v. Staples, Inc.*, 2014 WL 1477651, at *2 (N.D. Cal. Apr. 14, 2014)).

**B. Discussion**

Rule 45(a)(3) allows an attorney to "issue and sign a subpoena if the attorney is authorized to practice in the issuing court." In addition, "every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name[.]" Fed. R. Civ. P. 26(g)(1). "Other parties have no duty to act on an unsigned disclosure, request, response, or objection until it is signed, and the court must strike it unless a signature is promptly supplied after the omission is called to the attorney's or party's attention." Fed. R. Civ. P. 26(g)(2); *see also* Fed. R. Civ. P. 11(a) ("Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name. . . . The court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention.").

On January 24, 2018, Mr. Acevedo purported to sign the Subpoena on Plaintiff's behalf. Subpoena at ECF pp.7, 16. However, Mr. Acevedo was not Plaintiff's counsel of record at that time; he did not file a notice of appearance until March 14, 2018 – nearly two months later. Suppl. Brandt Decl. ¶ 2, Dkt. No. 110 (Plaintiff "inadvertently overlooked submitting a notice of appearance of counsel for" Mr. Acevedo); Notice of Appearance, Dkt. No. 111; *see* Mar. 12, 2018 Order, Dkt. No. 109 (requesting clarification of Mr. Acevedo's status); Civ. L.R. 5-1(c)(2)(A) ("A Notice of Appearance must be e-filed whenever counsel joins a case."). Because the Subpoena was not signed by an attorney of record as required by Rule 26(g)(1), the Court finds it defective and **GRANTS** the Motion to Quash. *See, e.g.*, *In re Wachovia Corp. "Pick-A-Payment" Mortg.*

5

1 *Mktg. & Sales Practices Litig.*, 2011 WL 1496342, at *1 (N.D. Cal. Apr. 20, 2011) (quashing
2 subpoena where attorney who signed it was not authorized to practice in the Northern District of
3 California).

**MOTION FOR PROTECTIVE ORDER**

Rule 26(c)(1) provides that "any person from whom discovery is sought may move for a protective order in the court where the action is pending[.]"

Amazon "objects to providing any deposition testimony pertaining to" Plaintiff's RFPs and argues "[a] protective order is warranted." Mot. at 9. Even if Mr. Acevedo's March 14, 2018 notice of appearance cured the defective Subpoena, the Subpoena requests confidential commercial information for which Plaintiff has not demonstrated a substantial need.

The RFPs and deposition topics concern Amazon's pricing and customer information related to Defendants and other entities, as well as information about the scope of Amazon's operations generally. This qualifies as confidential commercial information. *See* Fed. R. Civ. P. 45(d)(3)(B)(i); *Welle v. Provident Life & Accident Ins. Co.*, 2013 WL 6055369, at *2 (N.D. Cal. Nov. 14, 2013) (citing *Nutratech, Inc. v. Syntech (SSPF) Int'l, Inc.*, 242 F.R.D. 552, 555 n.4 (C.D. Cal. 2007) ("Customer/supplier lists and sales and revenue information qualify as 'confidential commercial information.'")).

Plaintiff fails to explain why it has a substantial need to request this information from a nonparty. Plaintiff argues "[d]iscovery has shown that Amazon was one of the limited number of recyclers that defendants Clean Harbors and Stericycle used to recycle paint collected in the San Francisco Bay Area." Opp'n at 4, 9. For that reason, Plaintiff contends it "should be allowed to find out from Amazon what it was told about the process and the manner in which it was audited and eventually approved to receive paint under the PaintCare Program." *Id.*; *see* Brandt Decl. ¶ 7, Dkt. No. 103-1. But Plaintiff does not explain why Defendants themselves cannot provide such information. Given that Defendants were involved in the approval process and audits with Amazon, if any,[3] they likely possess such information. Similarly, Plaintiff does not explain why it

---

[3] Martin Bergstedt, Amazon's President, declares "Amazon did not have to undergo a formal application and approval process." Bergstedt Decl. ¶ 5, Dkt. No. 106. Plaintiff did not object to

cannot obtain information about the prices Stericycle or Clean Harbors paid to Amazon, or communications Defendants had with Amazon, directly from those Defendants.

Plaintiff represents that "[D]efendants have provided some documents on these issues, but not a complete picture." Opp'n at 10; Brandt Decl. ¶ 10. To the extent Plaintiff seeks to confirm or further explore Defendants' written discovery responses (*see* Opp'n at 13-14; Brandt Decl. ¶ 10), Plaintiff has not shown why it cannot do so using other means, for instance, with a Rule 30(b)(6) deposition of Defendants' witness(es). *See Campbell v. Facebook Inc.*, 310 F.R.D. 439, 449 (N.D. Cal. 2015) ("[A] 30(b)(6) deposition . . . 'permit[s] the examining party to discover the corporation's position via a witness designated by the corporation to testify on its behalf.'"). As such, Plaintiff fails to demonstrate a substantial need to obtain this information from Amazon. The Court therefore finds a protective order is warranted at this time. *See Waymo*, 2017 WL 2929439, at *4.

## ATTORNEYS' FEES AND COSTS

Amazon requests an award of attorneys' fees and costs incurred in filing this Motion. Mot. at 10. The Court **DENIES** this request.

## CONCLUSION

Based on the foregoing analysis, the Court **GRANTS** Amazon's Motion.

**IT IS SO ORDERED.**

Dated: March 19, 2018

MARIA-ELENA JAMES
United States Magistrate Judge

---

the Bergstedt Declaration, which Amazon submits on Reply. *See* Civ. L.R. 7-3(d)(1) ("If new evidence has been submitted in the reply, the opposing party may file within 7 days after the reply is filed, and serve an Objection to Reply Evidence. . . .").